## JOHNSON v. UNITED STATES

No. 96–203.   Argued February 25, 1997—Decided May 12, 1997

*William J. Sheppard* argued the cause for petitioner. With him on the briefs were *D. Gray Thomas* and *Elizabeth L. White.*

*Deputy Solicitor General Dreeben* argued the cause for the United States. With him on the brief were *Acting Solicitor General Dellinger, Acting Assistant Attorney General Keeney,* and *Jonathan E. Nuechterlein.*\*

---

\*Briefs of *amici curiae* urging reversal were filed for the National Association of Criminal Defense Lawyers by *Neal Goldfarb, Barbara Bergman,* and *Blair G. Brown;* and ·for David R. Knoll by *Stephen L. Braga.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.*

In this case the trial court itself decided the issue of materiality in a perjury prosecution, rather than submitting it to the jury as our decision in *United States* v. *Gaudin,* 515 U. S. 506 (1995), now requires. No objection was made by the petitioner, Joyce B. Johnson, and we hold that the court's action in this case was not "plain error" of the sort which an appellate court may notice under Federal Rule of Criminal Procedure 52(b).

In the late 1980's, a federal investigation into the cocaine and marijuana trafficking of Earl James Fields revealed that he and his partner had amassed some $10 million from their illicit activities. Following the money trail, federal authorities subpoenaed Johnson, Fields' long-time girlfriend, to testify before a federal grand jury. Johnson, who is the mother of a child by Fields, earned about $34,000 a year at the Florida Department of Health and Rehabilitative Services. She testified before the grand jury that she owned five pieces of real property, including her house. That house was purchased by Johnson in 1991 for $75,600, and in the next two years she added sufficient improvements to it that in 1993 it was appraised at $344,800. When asked the source of her home improvement funds, Johnson stated that she had put $80,000 to $120,000 into her house, all of which had come from a box of cash given her late mother by one Gerald Talcott in 1985 or 1986.

On the basis of this testimony, Johnson was indicted for perjury under 18 U. S. C. § 1623. At trial, it was revealed that Fields had negotiated the original purchase of Johnson's home and that Johnson had paid for the property with eight different cashier's checks, including two from a corporation in which Fields had an interest. It was also established that Gerald Talcott had died in April 1982, several years before

---

*JUSTICE SCALIA joins all but Parts II–B and II–C of this opinion.

the time Johnson claimed he had given her mother the box full of cash.

At the close of Johnson's trial, and in accordance with then-extant Circuit precedent, see, *e. g.*, *United States* v. *Molinares*, 700 F. 2d 647, 653 (CA11 1983), the District Judge instructed the jury that the element of materiality was a question for the judge to decide, and that he had determined that her statements were material.. App. 72. Johnson did not object to this instruction. Indeed, when the prosecution had presented evidence concerning materiality during the trial, she had then objected, on the ground that materiality was a matter for the judge, and not the jury, to decide. *Id.*, at 61. The jury returned a verdict of guilty, and Johnson was sentenced to 30 months' imprisonment, three years' supervised release, and a $30,000 fine.

After Johnson was convicted, but before her appeal to the Court of Appeals, we decided *United States* v. *Gaudin*, *supra*, which held that the materiality of a false statement must be submitted to the jury rather than decided by the trial judge. On her appeal, Johnson argued that the trial judge's failure to submit materiality to the jury rendered her conviction invalid under *Gaudin*.

Because Johnson had failed to object to the trial judge's deciding materiality, the Court of Appeals for the Eleventh Circuit reviewed for plain error. Rule 52(b) of the Federal Rules of Criminal Procedure provides:

> "PLAIN ERROR. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Following our analysis in *United States* v. *Olano*, 507 U. S. 725 (1993), the Court of Appeals assumed, *arguendo*, that the District Court's failure to submit materiality to the jury constituted "error" that was "clear or obvious," but concluded nonetheless that any such error did not affect the "substantial rights" of the defendant. That conclusion was

based on the court's independent review of the record and determination that there was "overwhelming" evidence of materiality and that "[n]o reasonable juror could conclude that Johnson's false statements about the source of the money . . . were not material to the grand jury's investigation." App. to Pet. for Cert. 9a (judgt. order reported at 82 F. 3d 429 (CA11 1996)). Due to the conflict between this decision and the Ninth Circuit's en banc decision in *United States* v. *Keys*, 95 F. 3d 874 (1996), we granted certiorari. 519 U. S. 989 (1996). We now affirm.

## I

Title 18 U. S. C. § 1623 proscribes "knowingly mak[ing] any false material declaration" under oath before a grand jury. Although we merely assumed in *Gaudin* that materiality is an element of making a false statement under 18 U. S. C. § 1001, and although we recently held that materiality is not an element of making a false statement to a federally insured bank under 18 U. S. C. § 1014, *United States* v. *Wells*, 519 U. S. 482 (1997), there is no doubt that materiality is an element of perjury under § 1623. The statutory text expressly requires that the false declaration be "material." *Gaudin* therefore dictates that materiality be decided by the jury, not the court.

Petitioner, however, did not object to the trial court's treatment of materiality. Rule 30 of the Federal Rules of Criminal Procedure provides: "No party may assign as error any portion of the [jury] charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." This Rule is simply the embodiment of the "familiar" principle that a right " 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " *Olano, supra,* at 731 (quoting *Yakus* v. *United States*, 321 U. S. 414, 444 (1944)).

The Rule is mitigated, however, by Rule 52(b), which allows plain errors affecting substantial rights to be noticed even though there was no objection.

Petitioner argues that she need not fall within the "limited" and "circumscribed" strictures of *Olano,* because the error she complains of here is "structural," and so is outside Rule 52(b) altogether. But the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure. None of the cases discussing "structural error," upon which petitioner relies, were direct appeals from judgments of conviction in the federal system. Several came from state courts which had considered the claimed error under their own rules. See *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Arizona* v. *Fulminante,* 499 U. S. 279 (1991); *Sullivan* v. *Louisiana,* 508 U. S. 275 (1993). Others came here by way of federal habeas challenges to state convictions. See *Vasquez* v. *Hillery,* 474 U. S. 254 (1986); *McKaskle* v. *Wiggins,* 465 U. S. 168 (1984). None of them were subject to the provisions of Rule 52.

But it is that Rule which by its terms governs direct appeals from judgments of conviction in the federal system, and therefore governs this case. We cautioned against any unwarranted expansion of Rule 52(b) in *United States* v. *Young,* 470 U. S. 1 (1985), because it "would skew the Rule's 'careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed,'" *id.,* at 15 (quoting *United States* v. *Frady,* 456 U. S. 152, 163 (1982)). Even less appropriate than an unwarranted expansion of the Rule would be the creation out of whole cloth of an exception to it, an exception which we have no authority to make. See *Carlisle* v. *United States,* 517 U. S. 416, 425–426 (1996).

## II

We therefore turn to apply here Rule 52(b) as outlined in *Olano.* Under that test, before an appellate court can cor-

rect an error not raised at trial, there must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights." 507 U. S., at 732. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error " ' "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." ' " *Ibid.* (quoting *United States* v. *Young, supra,* at 15, in turn quoting *United States* v. *Atkinson,* 297 U. S. 157, 160 (1936)).

## A

There is no doubt that if petitioner's trial occurred today, the failure to submit materiality to the jury would be error under *Gaudin.* Under *Griffith* v. *Kentucky,* 479 U. S. 314 (1987), a "new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review . . . , with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.,* at 328. Because petitioner is still on direct review, *Griffith* requires that we apply *Gaudin* retroactively. Accordingly, under *Gaudin* there was "error," and the first prong of *Olano* is satisfied.

## B

The second prong is more difficult. *Olano* explained that the word "plain" is "synonymous with 'clear' or, equivalently, 'obvious.' " 507 U. S., at 734. But *Olano* refrained from deciding *when* an error must be plain to be reviewable. "At a minimum," *Olano* concluded, the error must be plain "under current law." *Ibid.* In the case with which we are faced today, the error is certainly clear under "current law," but it was by no means clear at the time of trial.

The Government contends that for an error to be "plain," it must have been so both at the time of trial and at the time of appellate consideration. In this case, it says, petitioner should have objected to the court's deciding the issue of materiality, even though near-uniform precedent both from this

Court and from the Courts of Appeals held that course proper.[1] Petitioner, on the other hand, urges that such a rule would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent. We agree with petitioner on this point, and hold that in a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be "plain" at the time of appellate consideration. Here, at the time of trial it was settled that the issue of materiality was to be decided by the court, not the jury; by the time of appellate consideration, the law had changed, and it is now settled that materiality is an issue for the jury. The second part of the *Olano* test is therefore satisfied.

## C

But even though the error be "plain," it must also "affec[t] substantial rights." It is at this point that petitioner's argument that the failure to submit an element of the offense to the jury is "structural error" becomes relevant. She contends in effect that if an error is so serious as to defy harmless-error analysis, it must also "affec[t] substantial rights." A "structural" error, we explained in *Arizona* v. *Fulminante,* is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," 499 U. S., at 310. We have found structural errors only in a very limited class of cases: See *Gideon*

---

[1] See *United States* v. *Corsino,* 812 F. 2d 26, 31, n. 3 (CA1 1987); *United States* v. *Bernard,* 384 F. 2d 915, 916 (CA2 1967); *United States* v. *Greber,* 760 F. 2d 68, 73 (CA3 1985); *Nilson Van & Storage Co.* v. *Marsh,* 755 F. 2d 362, 367 (CA4 1985); *United States* v. *Hausmann,* 711 F. 2d 615, 616–617 (CA5 1983); *United States* v. *Chandler,* 752 F. 2d 1148, 1150–1151 (CA6 1985); *United States* v. *Brantley,* 786 F. 2d 1322, 1327, and n. 2 (CA7 1986); *United States* v. *Hicks,* 619 F. 2d 752, 758 (CA8 1980); *United States* v. *Daily,* 921 F. 2d 994, 1004 (CA10 1990); *United States* v. *Lopez,* 728 F. 2d 1359, 1362, n. 4 (CA11 1984); *United States* v. *Hansen,* 772 F. 2d 940, 950 (CADC 1985).

v. *Wainwright*, 372 U. S. 335 (1963) (a total deprivation of the right to counsel); *Tumey* v. *Ohio*, 273 U. S. 510 (1927) (lack of an impartial trial judge); *Vasquez* v. *Hillery*, 474 U. S. 254 (1986) (unlawful exclusion of grand jurors of defendant's race); *McKaskle* v. *Wiggins*, 465 U. S. 168 (1984) (the right to self-representation at trial); *Waller* v. *Georgia*, 467 U. S. 39 (1984) (the right to a public trial); *Sullivan* v. *Louisiana*, 508 U. S. 275 (1993) (erroneous reasonable-doubt instruction to jury).

It is by no means clear that the error here fits within this limited class of cases. *Sullivan* v. *Louisiana*, the case most closely on point, held that the erroneous definition of "reasonable doubt" vitiated all of the jury's findings because one could only speculate what a properly charged jury might have done. *Id.*, at 280. The failure to submit materiality to the jury, as in this case, can just as easily be analogized to improperly instructing the jury on an element of the offense, *e. g.*, *Yates* v. *Evatt*, 500 U. S. 391 (1991); *Carella* v. *California*, 491 U. S. 263 (1989) *(per curiam)*; *Pope* v. *Illinois*, 481 U. S. 497 (1987); *Rose* v. *Clark*, 478 U. S. 570 (1986), an error which is subject to harmless-error analysis, as it can be to failing to give a proper reasonable-doubt instruction altogether. Cf. *California* v. *Roy*, 519 U. S. 2, 5 (1996) *(per curiam)* ("The specific error at issue here—an error in the instruction that defined the crime—is . . . as easily characterized as a 'misdescription of an element' of the crime, as it is characterized as an error of 'omission'").

## D

But we need not decide that question because, even assuming that the failure to submit materiality to the jury "affec[ted] substantial rights," it does not meet the final requirement of *Olano*. When the first three parts of *Olano* are satisfied, an appellate court must then determine whether the forfeited error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings' " before

it may exercise its discretion to correct the error. *Olano*, 507 U. S., at 736 (quoting *Atkinson*, 297 U. S., at 160). ·

In this case that question must be answered in the negative. As the Court of Appeals noted, the evidence supporting materiality was "overwhelming." App. to Pet. for Cert. 9a. Materiality was essentially uncontroverted at trial[2] and has remained so on appeal. The grand jury here was investigating petitioner's long-time boyfriend's alleged cocaine and marijuana trafficking and the "disposition of money which was proceeds of this cocaine and [marijuana] distribution activity, including the possible concealment of such proceeds as investments in real estate." App. 5–6. Before the Eleventh Circuit and in her briefing before this Court, petitioner has presented no plausible argument that the false statement under oath for which she was convicted—lying about the source of the tens of thousands of dollars she used to improve her home—was somehow not material to the grand jury investigation.

On this record there is no basis for concluding that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Indeed, it would be the reversal of a conviction such as this which would have that effect. "Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." R. Traynor, The Riddle of Harmless Error 50 (1970). No "miscarriage of justice" will result here if we do not notice the error, *Olano, supra,* at 736, and we decline to do so. The judgment of the Court of Appeals is therefore

*Affirmed.*

---

[2] The Government represents—and petitioner has not disputed—that the sum total of petitioner's argument at trial concerning materiality consisted of the following conclusory sentence: "'I would argue that the element of materiality has been insufficiently proven and that the Court ought to grant a judgment of acquittal.'" Brief for United States 5 (quoting trial transcript); see also Reply Brief for Petitioner 4, n. 5.