**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Steve TURMAN, Defendant–**
**Appellant.**

**No. 94–50305.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1995.

Submission Withdrawn Oct. 31, 1995.

Resubmitted Jan. 10, 1997.

Opinion Filed Jan. 17, 1997.

Opinion Withdrawn Sept. 12, 1997.

Decided Sept. 12, 1997.

Jay L. Lichtman, Los Angeles, CA, for defendant-appellant.

Mark C. Holscher, Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee.

Before: WALLACE, KOZINSKI and RYMER, Circuit Judges.

## ORDER

KOZINSKI, Circuit Judge.

The opinion filed January 17, 1997, is withdrawn, and the attached opinion is substituted therefor.

## OPINION

Robert Steve Turman was convicted of conspiracy, wire fraud, mail fraud and money laundering, all stemming from . his participation in a complex loan fraud scheme. From 1985 to 1988, Turman and his co-conspirators Milton Mende, Samuel Longo and Jackson Stacey operated a number of worthless shell corporations, the front for which was a firm named British Indemnity Group. The conspirators used fictitious paperwork and fraudulent accountant certifications to convince potential clients that these firms were backed by up to $3 billion in assets. Victims were thus induced to pay advance fees for loans that would never be funded, or purchase loan guarantees that would never be honored.

Defendant's money laundering convictions arose out of a transaction consummated with a victim named Bowman Industries. In exchange for $80,000, defendant and Stacey executed a contract pledging British Indemnity to guarantee a $2 million loan. They secretly diverted this $80,000 payment from British Indemnity to a checking account they had opened, and later siphoned $30,018 out of that account. These checking transactions violated the money laundering statute, 18 U.S.C. § 1957. *See, e.g., United States v. Montoya,* 945 F.2d 1068, 1076 (9th Cir.1991). We consider here Turman's challenges to these convictions.[1]

### I

Defendant first argues that his jury instructions erroneously described the knowledge elements of the money laundering statute. To convict defendant of money laundering under section 1957, the government had to prove that he "knowingly" engaged in a financial transaction with the proceeds of unlawful activity, and that he knew the transactions involved criminally derived property. *See United States v. Stein,* 37 F.3d 1407, 1410 (9th Cir.1994), *cert. denied,* 513 U.S. 1181, 115 S.Ct. 1170, 130 L.Ed.2d 1124 (1995). Here, the government was required to prove defendant knew the laundered funds were derived from wire fraud. The govern-

ment was not, however, required to prove defendant knew money laundering was itself illegal. *Id.*

Accordingly, the district court instructed the jury that, in order to find defendant guilty of money laundering, it must find he "knowingly engaged or attempted to engage in a monetary transaction which [he] knew involved criminally derived property." GSER at 20. At the prompting of defense counsel, the court reiterated this point, stating, "[t]he government must prove beyond a reasonable doubt that the Defendant knew that the monetary transaction involved criminally derived property." *Id.* So far, so good. The district court, however, also gave the jury the following general instruction defining the word "knowingly": "An act is done knowingly if the Defendant is aware of the act and does not act or fail to act through ignorance, mistake or accident. The Government is not required to prove the Defendant knew that his acts or omissions were unlawful." GSER at 18.

Defendant did not object to any of these instructions and the jury convicted him. While defendant was busy briefing his appeal, we decided *United States v. Stein.* In *Stein,* we reversed the money laundering convictions of another defendant whose jury had been given very similar instructions as to knowledge. We held that a broad, general definition of "knowingly" might be interpreted to allow conviction even where the defendant did not know the laundered funds were illegally obtained. *See* 37 F.3d at 1410. Although Turman didn't raise this claim below, he nevertheless asks us to reverse his conviction on grounds of *Stein* error.

In *United States v. Golb,* 69 F.3d 1417 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1369, 134 L.Ed.2d 534 (1996), the defendants (like Turman) were convicted of money laundering before *Stein* was decided.[2] They challenged their money laundering instructions on appeal, but because they (like Turman) failed to object below, we "review[ed] their contentions . . . only for plain error." *Id.* at 1428. Under *Golb,* we must review

---

1. We dispose of Turman's other claims in an unpublished memorandum disposition.

2. The *Golb* defendants were convicted on July 14, 1992. *See* 69 F.3d at 1421. *Stein* was not decided until October 13, 1994.

Turman's jury instructions only for plain error.

■ To secure reversal under this standard, defendant must prove that: (1) there was "error"; (2) the error was plain; and (3) the error affected "substantial rights." *United States v. Olano,* 507 U.S. 725, 730–32, 113 S.Ct. 1770, 1775–76, 123 L.Ed.2d 508 (1993). The first requirement is met here. *Stein* clearly holds that defendant's money laundering instructions were erroneous, and because a "new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases," *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 715, 93 L.Ed.2d 649 (1987), defendant is entitled to the benefit of this new rule on appeal.

Whether the error is "plain," however, is more difficult, and requires us to resolve a question the Court left open in *Olano.* Although the Court defined a "plain error" as one that is "clear" or "obvious," 507 U.S. at 734, 113 S.Ct. at 1777 it did "not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." *Id.* This is that case, as *Stein* was decided long after the ink had dried on defendant's guilty verdicts. We must therefore decide whether we look to the time of trial or the time of appeal to determine whether an error is plain.

■ Plain error, as we understand that term, is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection. *See United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1591, 71 L.Ed.2d 816 (1982) (error is plain only if trial judge is "derelict in countenancing it"). When the state of the law is unclear at trial and only becomes clear as a result of later authority, the district court's error is perforce not plain; we expect district judges to be knowledgeable, not clairvoyant. When the law is such that an experienced district judge cannot be expected to detect the error on his own, that is precisely when it is most important for the parties to object. An objection affords the judge an opportunity to focus on the issue and hopefully avoid the error, thereby saving the time and expense of an appeal and retrial. We thus conclude that plain error, as that term is used in Fed.R.Crim.P. 52(b), normally means error plain at the time the district court made the alleged mistake.

■ There is one exception to this rule, however: "[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States,* — U.S. ——, ——, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997). In that situation, objections are pointless. Measuring error at the time of trial "would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent." *Id.* This is not such a case. The law regarding the definition of "knowingly" was unsettled when Turman stood trial, and he could have objected to the instruction given. *Stein* apparently did so in the case which settled the law. Thus, this case falls under the general rule, not the *Johnson* exception. We need only determine whether the *Stein* error was plain at the time the district court made the alleged mistake.

Other circuits have reached the same conclusion. Thus, the Fourth Circuit in *United States v. David,* 83 F.3d 638 (4th Cir.1996), the Fifth in *United States v. Calverley,* 37 F.3d 160 (5th Cir.1994), *cert. denied* 513 U.S. 1196, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995), and *United States v. Dupaquier,* 74 F.3d 615, 619 (5th Cir.1996), and the D.C. Circuit in *United States v. Washington,* 12 F.3d 1128 (D.C.Cir.1994), *cert. denied,* 513 U.S. 828, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994), all concluded that, where the law was unsettled at the time of trial but has been clarified by the time of appeal, such an error is not plain. As the Fourth Circuit noted: "If the contemporaneous objection requirement is to have any real force, presumably an objection would be required (and review would be barred for failure to object) in the circumstance where the law at the time of trial is unclear as to whether the district court's proposed course would constitute error." *David,* 83 F.3d at 643. This reflects our view precisely.

Some circuits have announced apparently different rules, but they did so on materially different facts. In *United States v. Ross,* 77

F.3d 1525 (7th Cir.1996), for example, the Seventh Circuit dealt with a conviction that had become invalid in light of *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The Seventh Circuit thus confronted a situation much more analogous to that in *Johnson* than that here: Because pre-*Gaudin* law would have rendered any objection at trial futile, the fact that no objection was made should not have prejudiced defendant's ability to raise the point on appeal. *See Ross,* 77 F.3d at 1539. Significantly, all circuits that purport to judge the plainness of the error as of the time of appeal confronted situations where the objections could not, as a practical matter, have been made at trial. *See United States v. Baumgardner,* 85 F.3d 1305, 1308–09 (8th Cir.1996) (reversal based on *Gaudin*); *United States v. Webster,* 84 F.3d 1056, 1066–67 (8th Cir.1996) (reversal based on *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)); *David,* 83 F.3d at 646 (reversal based on *Gaudin*); *United States v. Kramer,* 73 F.3d 1067, 1075 (11th Cir.1996) (reversal based on *Gaudin*); *United States v. Viola,* 35 F.3d 37, 41–43 (2d Cir.1994) (reversal based on *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)), *cert. denied* 513 U.S. 1198, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *United States v. Retos,* 25 F.3d 1220, 1229–30 (3d Cir.1994) (reversal based on *Ratzlaf v. United States,* 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)). All of these cases would have fallen within the *Johnson* exception to Rule 52(b)'s contemporaneous objection requirement.

■ We see no reason therefore to paint with the broad brush wielded by these circuits. We conclude, along with the Fourth, Fifth and D.C. Circuits, that where an objection at trial would not have been futile, an error is not plain unless it would have been obvious to a reasonably competent district judge at the time of trial. If the district judge would have had to be clairvoyant to detect the error (perhaps by foreseeing yet undecided court of appeals or Supreme Court caselaw) the error is not plain and defendant must object as a condition for having it considered on appeal.

■ Applying the standard to our case, the error here was not plain. At the time defendant was tried, no circuit (including our own) had considered the validity of his money laundering instructions, nor was the error so obvious that the district judge should have recognized it on her own. In order to convict defendant of money laundering, the jury was told it must find he *"knowingly* engaged or attempted to engage in a monetary transaction which [he] *knew* involved criminally derived property." GSER at 20. The definition of "knowingly" did not require proof that defendant knew his acts were unlawful, but this instruction was accurate as it pertained to defendant's knowledge that money laundering was illegal. *See Stein,* 37 F.3d at 1410. The only risk of error was that the jury might mistakenly apply the definition of "knowingly" to the requirement that defendant "knew" the transactions involved criminally derived property.

Although this raised some potential for confusion, the error would not have been "clear" or "obvious" to a reasonably competent district judge. Because the district judge twice instructed the jury that defendant had to know the money was unlawfully derived, she could fairly assume that, in resolving this factual issue, the jury would follow these specific instructions rather than the more general "knowingly" instruction. The conflict between the two instructions identified in *Stein* is far from obvious, and the district judge could not have been expected to notice the tension without the benefit of an objection from counsel. Based on the law as it stood at the time of trial, the error we identified in *Stein* was not plain.

## II

■ Defendant next claims the evidence was insufficient to support his money laundering convictions. At the time defendant executed the loan guarantee with Bowman Industries, however, both he and co-conspirator Stacey knew British Indemnity had no assets and would therefore have been unable to make any of the promised payments. Nevertheless, defendant claims the $80,000 from Bowman were not fraudulently obtained because he and Stacey intended to find legitimate assets to back the guarantee. However genuine this intention might have been, it is

insufficient to prove that defendant did not defraud Bowman. At the time the guarantee was issued, these legitimate assets were not in place. A significant chance thus remained that the guarantee would go unfunded. Because Bowman was induced to purchase the guarantee based on false representations about British Indemnity's assets, and surely would not have executed the agreement had it known the true state of British Indemnity's affairs, the evidence amply supports the jury's conclusion that defendant defrauded Bowman.

Defendant also contends that the evidence was insufficient to prove the fraudulently obtained funds traveled by wire, as the $80,000 payment was hand-delivered to British Indemnity by Gerald Libby, Bowman's attorney. However, Libby testified that Bowman had a practice of wiring money to a trust account at his law firm; that he would disperse these funds as instructed; and that funds were wired to the trust account the morning he delivered the check to British Indemnity. This evidence was sufficient to permit a reasonable jury to infer that the fraudulently obtained funds traveled by wire.

Convictions **AFFIRMED;** Sentence **VACATED** and **REMANDED** as ordered in our unpublished disposition filed January 17, 1997.