**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Benjamin KLINGER, Defendant–Appellant.**

**No. 94–50584.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1995.

Submission Withdrawn July 22, 1996.

Resubmitted July 18, 1997.

Decided Sept. 19, 1997.

As Amended Nov. 18, 1997.

Phillip Trevino, Los Angeles, CA, Mary Gibbons, Tappan, NY, for defendant-appellant.

Richard Drooyan and David F. Taylor, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, CANBY and HAWKINS, Circuit Judges.

**MICHAEL DALY HAWKINS**, Circuit Judge:

This appeal requires us to apply to an instructional error the plain error standard of review recently clarified by the Supreme Court's decision in *Johnson v. United States,* — U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), and this court's en banc decision in *United States v. Perez,* 116 F.3d 840 (9th Cir.1997) (en banc).[1] Defendant Benjamin Klinger was convicted of twenty counts of making false statements to a bank in violation of 18 U.S.C. § 1014, three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), five counts of unlawful monetary transactions in violation of 18 U.S.C. § 1957, and one count of mail fraud in violation of 18 U.S.C. § 1341. Klinger raises several challenges to his conviction. For the first time on appeal, he asserts that certain of the counts contained in the indictment were multiplicitous and contends others were duplicitous. He also challenges the district court's exclusion of a defense witness's testimony based on that witness's anticipated assertion of his Fifth Amendment privilege against self-incrimination. Finally, Klinger challenges the district court's instruction to the jury as to the definition of "knowingly," arguing that this general definitional instruction conflicted with the court's specific instructions as to the knowledge elements of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1957. Because Klinger failed to preserve his challenge to this instruction below, we apply the plain error standard of review recently clarified in *Johnson.*

We have jurisdiction over this direct criminal appeal pursuant to 28 U.S.C. § 1291.

## FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1988, Benjamin Klinger was the president and majority partner of Best Fire Protection, a fire sprinkler installation

---

1. After this appeal was argued and submitted, the full court voted to rehear *Perez* en banc on the plain error issue. We therefore withdrew

this appeal from submission pending the outcome of the en banc decision in *Perez.* We also had withdrawn submission pending the outcome of *United States v. Keys,* 95 F.3d 874 (9th Cir. 1996) (en banc), which the Supreme Court reversed on the basis of *Johnson. See United States v. Keys,* — U.S. ——, 117 S.Ct. 1816, 137 L.Ed.2d 1025 (vacating Ninth Circuit opinion and remanding case for further consideration in light of *Johnson* ).

and maintenance company in the Los Angeles area. Between 1990 and 1992, Klinger applied for and obtained business and personal loans totalling approximately $1,000,000. In applying for these loans, Klinger submitted false federal tax returns and other false personal and financial information to various lenders. Following disbursement of the fraudulently obtained loan proceeds, Klinger deposited portions of the proceeds into Best Fire Protection's corporate bank accounts and into his personal bank accounts, while other portions of the loan proceeds were moved through Klinger's and his business partner's accounts at a brokerage house. Records of the brokerage house accounts were submitted to other lenders in an effort to deceive these lenders as to the value of Klinger's and his business partner's investments.

As a result of these activities, Klinger was indicted on twenty counts of making false statements to a bank under 18 U.S.C. § 1014, three counts of money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), five counts of unlawful monetary transactions under 18 U.S.C. § 1957, and three counts of mail fraud under 18 U.S.C. § 1341.

A central issue at Klinger's trial was whether Klinger had knowledge that false tax returns and false financial statements were submitted to various banks in connection with his loan applications. Klinger defended on the basis that his business partner and his accountants orchestrated the bank fraud scheme, and that he was unaware of the discrepancies between tax returns filed with the Internal Revenue Service and copies of tax returns submitted to the lenders. He testified that his former accountant, Shaul Sobel, handled financial and tax matters for Best Fire Protection.

As part of his defense, Klinger planned to call Sobel as a defense witness because Klinger alleged Sobel had prepared many of the financial documents at issue in the case. Although Sobel was not a defendant in the case and there was no indication that he was facing criminal charges based on his relationship with Klinger, he appeared at Klinger's trial, with counsel, pursuant to a subpoena from Klinger.

Before Klinger's attorney could call Sobel to testify, however, the government attorney objected, stating that he expected Sobel to assert his Fifth Amendment privilege against self-incrimination, and contending that it would be improper for the defense to call Sobel solely to have him assert his Fifth Amendment privilege in front of the jury. The government contended, and the district court agreed, that "the mere assertion of the Fifth Amendment privilege by a witness has no evidentiary value whatsoever." The government attorney suggested to the district court that the proper way to determine whether Sobel would in fact assert his Fifth Amendment privilege would be to "put [Sobel] on the stand outside the presence of the jury," and to exclude his testimony if he asserted his Fifth Amendment privilege during the hearing.

In response, Klinger's attorney argued that Klinger had testified that he was unable to obtain certain financial records necessary to his defense because he had given those records to Sobel. The defense contended that its purpose in calling Sobel to testify was "to present evidence that [Klinger] does not have those books and records and try to present evidence as to ... the last place [Klinger] knew they were" and to show Klinger's efforts to subpoena the financial records from Sobel. The district court asked, "Sobel's not going to testify to anything, is he?" Klinger's attorney responded, "I believe he will acknowledge that he did receive that subpoena duces tecum." Klinger's attorney told the district court, however, that Sobel would invoke his Fifth Amendment privilege if asked what financial records he possessed.

Concluding that such testimony would be "non evidence," the district court stated that "if what the witness is or is not going to testify to is not going to have some evidentiary value, and it doesn't prove or disprove one way or the other, then that testimony can't come in." The court also noted that "a person can't be called for the purpose of asserting the Fifth Amendment." Without holding an evidentiary hearing as to whether Sobel would invoke his Fifth Amendment privilege, the district court excluded Sobel as a witness.

At the close of evidence, the jury was instructed as to the offenses charged. With

respect to the money laundering counts under 18 U.S.C. § 1956(a)(1)(A)(i), the district court instructed the jury that, to convict, the government must prove beyond a reasonable doubt that:

> [T]he defendant *knew* that the property involved in the financial transaction represented the proceeds of some unlawful activity.

(emphasis added).

Immediately after reading the elements of 18 U.S.C. § 1956(a)(1)(A)(i), the district court gave the following general definition of "knowingly":

> An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake or accident. *The government is not required to prove that the defendant knew his acts or omissions were unlawful.*

(emphasis added).

A few sentences later, the district court further defined the knowledge element of 18 U.S.C. § 1956(a)(1)(A)(i) as follows:

> The term, quote, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity," unquote, means that the person knew the property involved in the transaction represented the proceeds from some form, though not necessarily which form, of activity that constitutes a felony under state or federal law. A violation of Title 18 United States Code Section 1014 is a felony under federal law.

After defining other terms contained in 18 U.S.C. § 1956(a)(1)(A)(i), the district court instructed the jury on the elements of an unlawful monetary transaction under 18 U.S.C. § 1957, instructing that, to convict, the government must prove that:

> [T]he defendant *knowingly engaged* or attempted to engage in a monetary transaction involving criminally derived property.

(emphasis added).

The district court also offered a further instruction on § 1957's knowledge element, stating:

> "[c]riminally derived property" ..., means any property constituting or derived from the proceeds of any criminal offense.

. . .

> The government is not required to prove that the defendant knew the offense from which the criminally derived property was specified unlawful activity [sic].

On March 3, 1994, the jury returned a guilty verdict on all remaining counts (two mail fraud counts having been earlier dismissed on government motion). The district court sentenced Klinger to 120 months' imprisonment, to be followed by five years of supervised release.

## ANALYSIS

### 1. The Form of the Indictment

■ For the first time on appeal, Klinger contends that the indictment was duplicitous and multiplicitous: duplicitous because two of the money laundering counts alleged that Klinger manipulated illegally obtained loan proceeds for the purpose of deceiving *two* banks, but the counts did not require jury unanimity as to which bank, and multiplicitous because it charged him with separate counts under 18 U.S.C. § 1014 for each false financial document he submitted in connection with various loan applications.

Rule 12(b)(2) of the Federal Rules of Criminal Procedure requires a defendant to raise "prior to trial" any objections "based on defects in the indictment," and Rule 12(f) provides that failure to raise such objections "shall constitute waiver thereof." Klinger does not contend that he raised either of these challenges by pretrial motion, and no pretrial objection appears in the record.

We have held that challenges based on the alleged duplicity of an indictment fall squarely within Rule 12(b)(2)'s mandate. *United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir.1988). As he failed timely to challenge the indictment as duplicitous before trial, Klinger waived that objection under · Rule 12(f).

We further recognize that claims of multiplicity are subject to Rule 12(b)(2). *See United States v. Smith*, 866 F.2d 1092, 1096 (9th Cir.1989). Klinger therefore also has waived his challenge to the indictment as multiplicitous.

## 2. Exclusion of Sobel Testimony

■ Klinger challenges the district court's decision to exclude the testimony of his accountant, Shaul Sobel, on the basis of Sobel's anticipated invocation of his Fifth Amendment privilege against self-incrimination. Klinger insists that this decision not only deprived him of his Sixth Amendment right to compulsory process, but also was made without an evidentiary hearing as to the validity and scope of Sobel's Fifth Amendment privilege. By excluding Sobel's testimony, insists Klinger, the district court prevented him from "dispel[ling the] inference" that Sobel was hiding relevant financial records in collusion with Klinger. We review for abuse of discretion the district court's evidentiary rulings, *United States v. Manning*, 56 F.3d 1188, 1196 (9th Cir.1995), as well as its decision whether to conduct an evidentiary hearing. *United States v. Montoya*, 45 F.3d 1286, 1291 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995).

It is well established that a criminal defendant may not call a witness if that witness—whether or not a codefendant—"will merely be invoking his Fifth Amendment right not to testify." *United States v. Espinoza*, 578 F.2d 224, 228 (9th Cir.1978). The rationale for this rule is that the prosecution would be denied the opportunity to cross-examine the defendant's witness if that witness were simply to invoke his or her Fifth Amendment privilege with respect to "questions on non-collateral matters." *Denham v. Deeds*, 954 F.2d 1501, 1504 (9th Cir.1992). Thus insulated from cross-examination, the witness's testimony "cannot be considered reliable." *Id.*

In this case, the record is clear that Sobel would have invoked his Fifth Amendment privilege with respect to all relevant issues. Klinger's attorney explained to the district court that his purposes in calling Sobel as a witness were: (1) to show that, to the best of Klinger's knowledge, some of Best Fire Protection's financial records were in Sobel's possession, and (2) to have Sobel admit that he received Klinger's subpoena duces tecum seeking those financial records. Klinger's attorney stated, however, that he expected Sobel to invoke his Fifth Amendment privilege with respect to the first issue, and expected that the sole question Sobel would answer was whether he had received Klinger's subpoena duces tecum. The district court ruled that Sobel's testimony with respect to his receipt of the subpoena would be irrelevant and therefore inadmissible. We conclude that this ruling was an appropriate application of the exclusionary principle because it was clear that Sobel would invoke his Fifth Amendment privilege as to all questions but one, and that viable question was excludable for lack of relevance.

■ We conclude, moreover, that the district court followed an appropriate procedure in excluding Sobel's testimony. In deciding whether the testimony of a particular witness should be excluded because that witness will refuse to answer "non-collateral" questions, a district court must ordinarily determine whether a witness will invoke his Fifth Amendment privilege "in response to specific questions." *United States v. Tsui*, 646 F.2d 365, 367 (9th Cir.1981). A district court may conduct an evidentiary hearing of the proposed witness's testimony outside the presence of the jury, but our case law does not mandate such a hearing. *See, e.g., Denham*, 954 F.2d at 1503. Where the district court finds that the witness could invoke his Fifth Amendment privilege as to all questions, it may recognize a witness's blanket privilege against self-incrimination if "the court, based on its knowledge of the case and of the testimony expected from the witness, can conclude that the witness could legitimately refuse to answer essentially all relevant questions." *Tsui*, 646 F.2d at 368 (quotation omitted).

Although the district court did not hold an evidentiary hearing to determine whether Sobel would invoke his Fifth Amendment privilege, the court did conduct a thorough colloquy on this issue with counsel for both sides.[2] The district court based its decision

---

2. The government contends that Klinger failed to raise below his argument that the district court should have held a hearing before excluding Sobel's testimony. However, the record is clear that the government's own attorney suggested to the district court that a hearing was the proper method for determining whether Sobel would invoke his Fifth Amendment privilege. It would therefore have been redundant for Klinger's attorney to do so. The government cannot now claim that the defendant failed to raise an issue on which the district court held an extensive colloquy.

to exclude Sobel's testimony on the attorneys' representations about the expected content of that testimony, relying especially on Klinger's own attorney's assertion that Sobel would invoke his Fifth Amendment privilege in response to all but one question. Because it legitimately concluded that Sobel would refuse to answer "all relevant questions," *id.*, the district court appropriately excluded that testimony without an evidentiary hearing.

### 3. Jury Instructions on 18 U.S.C. §§ 1956 and 1957

Klinger's final challenge to his conviction is that the district court's general instruction defining "knowingly" conflicted with the court's specific instructions as to the knowledge elements of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1957. We reversed a conviction on the basis of similar jury instruction error in *United States v. Stein*, 37 F.3d 1407 (9th Cir.1994), *cert. denied*, 513 U.S. 1181, 115 S.Ct. 1170, 130 L.Ed.2d 1124 (1995).

Though *Stein* had not been decided at the time of Klinger's trial, its rule "is to be applied retroactively to all cases . . . pending on direct review or not yet final." *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). Thus, it is apparent that the district court erred in instructing the jury as it did; the question we must resolve is whether that error warrants reversal of Klinger's conviction. That question, however, requires us first to determine whether Klinger preserved his challenge for appeal, which will dictate the standard of review that we apply.

### a. Whether Klinger Preserved for Appeal his Challenge to the Jury Instructions

Rule 30 of the Federal Rules of Criminal Procedure governs the reviewability of jury instructions in federal criminal trials. Rule 30 provides, in pertinent part:

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which that party objects and the grounds of the objection.*

Fed.R.Crim.P. 30 (emphasis added).

■ Where a defendant fails properly to object to a jury instruction or to an omission from a jury instruction, we review for plain error. *See, e.g., United States v. Karterman*, 60 F.3d 576, 579 (9th Cir.1995). We have applied this principle in several contexts: (1) where a defendant failed to "object contemporaneously" to a particular instruction given by the district court, *United States v. Fagan*, 996 F.2d 1009, 1016 (9th Cir.1993); (2) where a defendant failed to object to a district court's *refusal* to give that defendant's proposed instruction, *Karterman*, 60 F.3d at 579; and, (3) where a defendant failed to object to a district court's erroneous *omission* of an instruction and failed to "request the instructions at trial." *United States v. Ponce*, 51 F.3d 820, 830 (9th Cir.1995).

■ Rule 30 also requires that a defendant object with adequate specificity—an objection must "stat[e] distinctly the matter to which the party objects," as well as "the grounds of the objection." Fed.R.Crim.P. 30; *see United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989) (to satisfy Rule 30, a party must make a "specific objection" that is "formal, timely, and distinctly stated"). A defendant's mere proposal of an alternate instruction does not satisfy Rule 30's standard of specificity. *See, e.g., United States v. Campbell*, 42 F.3d 1199, 1204 (9th Cir.1994); *United States v. Williams*, 990 F.2d 507, 511 (9th Cir.1993); *Kessi*, 868 F.2d at 1102.

■ At Klinger's trial, when the district court met with counsel to review their proposed jury instructions, the government proposed one general definition of the term "knowingly," while Klinger proposed an alternate definition. Counsel discussed the competing proposals for the definition of "knowingly" with the district court as follows:

> THE COURT (reading aloud a portion of the government's proposed instruction): An act is done knowingly. That looks traditional. I will give it.
> MR. RANDOLPH (trial counsel for Klinger): Your honor, I would ask that the court for [instruction number] 30, the act unknowingly to give defense 23 right out of Devitt and Blackmar.

MR. TAYLOR (counsel for the government): Your honor, the one we propose is the Ninth Circuit instruction. I think it says what Devitt and Blackmar says in more concise language in that it goes on to say with the last two sentences the government is not required to prove ...

THE COURT: Yes, I'll give the government's instruction on that.

The district court subsequently gave the government's general instruction defining "knowingly."

This record indicates that, despite the district court's refusal to give Klinger's proposed definition of "knowingly," Klinger's attorney did not offer a specific objection to the government's instruction. In particular, Klinger did not articulate the challenge he seeks to raise now: that the general "knowingly" instruction conflicted with and effectively eliminated the knowledge elements of § 1956(a)(1)(A)(i) and § 1957. Klinger's mere proposal of an alternate definition of "knowingly" was inadequate to preserve the challenge he now makes on appeal. *See Kessi*, 868 F.2d at 1102.

█ We do, however, recognize "a sole exception to the requirement of a formal, timely, and distinctly stated objection" when a proper objection would be a "pointless formality." *Id.* (quotation omitted). A proper objection would be a "pointless formality" if: (1) "throughout the trial the party argued the disputed matter with the court"; (2) "it is clear from the record that the court knew the party's grounds for disagreement with the instruction"; and (3) the party proposed an alternate instruction. *Id.*

Klinger has not established—nor does the trial transcript indicate—that a specific objection would have been a "pointless formality." Klinger's attorney did not argue the disputed matter with the district court throughout the trial, and it is not clear from the record that the district court understood Klinger's grounds for disagreement with the instruction.[3] Klinger therefore never made the district court aware of his challenge to the general "knowingly" definition, and we cannot say on the record before us that an objection to the particular instruction would have been a pointless formality.

Similarly, Klinger did not object adequately to the specific instruction on the knowledge element of either § 1956(a)(1)(A)(i) or § 1957. Klinger's sole challenge with respect to the instructions on § 1956(a)(1)(A)(i) was to the intent element of the government's proposed instructions. Klinger offered no objection at trial to the knowledge element of the proposed instructions. When the district court reviewed with counsel the proposed instructions on the elements of § 1957, Klinger offered no objection whatsoever. Moreover, Klinger did not object following the reading of the instructions to the jury. When the district court summoned counsel to a sidebar conference and asked for any objections to the instruction that had just been read, Klinger had none.

On the basis of our review of the record, we conclude that Klinger failed to preserve for appeal his challenge to the district court's allegedly conflicting definitions of "knowingly," as he did not "stat[e] distinctly" the "grounds of the objection" as required by Rule 30. The instructions are therefore subject to plain error review. *See Johnson*, —— U.S. at ——, 117 S.Ct. at 1548 (Rule 30 "is mitigated, however, by Rule 52(b), which allows plain errors affecting substantial rights to be noticed even though there was no objection.").

### b. Instruction Defining "Knowingly" and Plain Error Doctrine

█ Having determined that Klinger failed to object to the jury instructions at

---

**3.** Although Klinger suggests that the district court understood his challenge to the general "knowingly" definition, quoting the district court's acknowledgment that "much of [defense counsel's] examination has been pointed at precisely *that element*," he takes that quote out of context. The district court made the above statement in reference to Klinger's objection to the instruction on the *intent* element of § 1956(a)(1)(A)(i), not the *knowledge* element. *See Kessi*, 868 F.2d at 1102 ("specific objection to a different part of the instruction ... does not satisfy Rule 30"). The intent element requires proof that the defendant laundered money with the intent to promote criminal activity, whereas the knowledge element requires proof that the defendant knew the money derived from illegal activity.

Klinger has abandoned on appeal his objection to the instruction on the intent element of § 1956(a)(1)(A)(i).

trial, we review for plain error. Rule 52(b) of the Federal Rules of Criminal Procedure provides:

> PLAIN ERROR. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the Court.

Fed.R.Crim.P. 52(b). According to *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), before we may correct an error not raised at trial,

> there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Johnson,* —— U.S. at ——, 117 S.Ct. at 1549 (citing *Olano,* 507 U.S. at 732, 113 S.Ct. at 1776–77) (quotations omitted). We turn now to the *Olano* inquiry.

### i. Was there "error"?

As explained above, *Griffith* requires retroactive application of the rule we announced in *Stein,* 37 F.3d at 1409–10. There is no doubt that if appellant were tried today, the jury instructions as given would be error under *Stein.* *See Johnson,* —— U.S. at ——, 117 S.Ct. at 1549 ("There is no doubt that if petitioner's trial occurred today, the failure to submit materiality to the jury would be error...."). Thus here, as in *Johnson,* there is "error" that satisfies the first prong of *Olano.*

### ii. Was it "plain"?

Plain error is "error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *United States v. Turman,* 122 F.3d 1167, 1170 (9th Cir.1997). The error must be plain at the time the district court made the alleged mistake. *Id.* As we discussed in *Turman,* the law regarding the conflict between the two knowledge instructions was unsettled at the time of trial. *Id.* at 1171. Thus, the *Stein* error was not plain.

Because we find the district court's jury instructions did not constitute plain error, we need not reach the two remaining steps in the *Olano* inquiry.

AFFIRMED.