**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Stephen B. GOSSMAN, Defendant—Appellant.**

**No. 04–50238.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 2005.

Decided June 8, 2005.

As Amended July 25, 2005.

Mark R. Rehe, Esq., USSD—Office of the U.S. Attorney, San Diego, CA, for Plaintiff—Appellee.

Charles M. Sevilla, Esq., Cleary & Sevilla, LLP, San Diego, CA, for Defendant—Appellant.

Before WARDLAW and BERZON, Circuit Judges, and FITZGERALD,* District Judge.

* The Honorable James M. Fitzgerald, Senior     United States District Judge for the District of

## MEMORANDUM **

Stephen Gossman appeals his conviction and sentence following a jury trial for seven counts of health care fraud, in violation of 18 U.S.C. § 1347, and ten counts of money laundering, in violation of 18 U.S.C. § 1956. He was sentenced to 46 months in prison and three years of supervised release on each count, to run concurrently. He was also assessed $100 per count, fined $315,000, and ordered to pay $116,282 in restitution. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm Gossman's conviction.

■ 1. The district court did not abuse its discretion by refusing to allow Gossman to adduce evidence that Medi–Cal failed to comply with its own rules when it accepted and relied upon information he provided on the Medi–Cal application of his grandmother, Rose Dryshel. Gossman signed an Authorized Representative form in August 1998. Furthermore, beginning in 1994, Gossman signed a number of DHS 7068 forms, which state: "You have accepted responsibility to act on behalf of the Medi–Cal applicant/beneficiary." He also participated in a face-to-face interview with Medi–Cal representatives to verify Rose's Statement of Facts. Given Gossman's representations that he was acting on behalf of Rose, his intention that Medi–Cal representatives rely upon his statements, and Medi–Cal's actual reliance in providing assistance to Rose, Gossman cannot now argue that his fraudulent conduct is excused by alleged procedural errors by Medi–Cal employees. *Neder v. United States,* 527 U.S. 1, 24–25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (stating that justifiable reliance "plainly [has] no place in the federal fraud statutes").

2. Nor did the district court abuse its discretion in excluding evidence of Medi–Cal's alleged "30–month" rule for eligibility. The government claimed that no transfers of property ever took place, and Gossman testified that the property was "always his." Therefore, the existence of a 30–month rule was irrelevant to Gossman's case.

■ 3. The district court did not err by refusing to allow Gossman to present a prior consistent statement regarding Gossman's ownership of his condo. The "offer of proof as to Rangel [was] that he did develop an awareness as to the ownership of the house. That awareness was that the property belonged to Steve [Gossman] and was to go to Steve during the relevant period, from 1982 to 1988." Because the offer of proof was not that Gossman actually told Rangel that the property was his, the hearsay exception was inapplicable, and the statement was properly barred. Fed.R.Evid. 801(d)(1)(b).

■ 4. Any error in the district court's failure to instruct the jury that materiality was an element of health care fraud was harmless. *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Gossman's representations to Medi–Cal that Rose had no more than $2,000 in assets, and that no property of Rose's had been given away, sold, or traded within 30 months of his signing the form, were plainly material to Medi–Cal's decision to provide coverage. Indeed, the district court itself found that the statements had "a direct impact on eligibility for the Medi–Cal program so that the statements were, in fact, material."

Alaska, sitting by designation.
** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

5. Gossman waived his arguments that Counts 1 through 6 of the Superseding Indictment are multiplicitous, and that Counts 1 and 2 are time-barred, as he failed to raise either issue before trial. *See United States v. Klinger*, 128 F.3d 705, 708 (9th Cir.1997); *United States v. De Tar*, 832 F.2d 1110, 1114 (9th Cir.1987).

■ 6. The district court did not err by instructing the jury that "[i]f a fraud is committed through the concealment of assets, those concealed assets constitute 'proceeds' of the fraud." Gossman failed to declare to Medi–Cal hundreds of thousands of dollars of Rose's assets; he sold her condo, and deposited the proceeds of the sale, along with Rose's cash, into several of his own bank accounts. If he had declared these assets to Medi–Cal, Rose would not have been eligible for health care. Indeed, California Welfare & Institutions Code § 14014 states that a "any person making false declarations as to eligibility on behalf of any other person receiving health care for which that other person was not eligible shall be liable for repayment." Thus, because of the concealment, Gossman, as Rose's sole beneficiary, eventually obtained for his own use money that he would not otherwise have had.

In *United States v. Ladum*, 141 F.3d 1328, 1340 (9th Cir.1998), we held that "the proceeds of Ladum's bankruptcy fraud include[d] not just the [concealed] stores, but also the funds received by those businesses." Like Gossman, the defendants in *Ladum* were convicted under a money laundering statute. Furthermore, in *United States v. Estacio*, 64 F.3d 477, 480 (9th Cir.1995) we held that even something as intangible as a "fraudulently obtained line of credit, which results in an artificially inflated bank balance, is within the scope of the term 'proceeds' as used in § 1956." By selling Rose's condo and concealing her assets in his own bank accounts, Gossman "knowingly promoted the commission of . . . fraud." *Id.* As in *Estacio* and *Ladum*, those assets were thus appropriately deemed "proceeds."

■ 7. The prosecutor's remark that Gossman's defense counsel "knows that the actual evidence in this case is overwhelmingly against the defendant" was not inappropriate. This statement was a proper response to Gossman's arguments that the evidence was a "distraction." *See United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir.1997).

■ However, the prosecutor's remarks regarding David Abrams were improper, and amounted to prosecutorial error. The prosecutor presented a hypothetical to the jury in which he suggested that Gossman had encouraged David Abrams to lie, and that Abrams had not been called by the defense because he refused to do so:

You can just imagine how that conversation went with Mr. Gossman.

"Dave [Abrams], you know, I asked to for a favorable forge [sic] and you came through and told that story to the agents, but it didn't work. I need you to come up on the stand and deny that you told the agents that story."

You can only imagine Mr. Abrams' reaction. "Look, Steve [Gossman], it's one thing to lie to the agents in an interview, but I am not going to get up on the witness stand and take the oath and commit perjury. You are on your own."

We have held that there was no misconduct in a case where a prosecutor asked a jury to speculate, but the "jury was capable of distinguishing the arguments from the evidence." *See Hendricks v. Zenon*, 993 F.2d 664, 675 (9th Cir.1993). Here, however, the prosecutor went further than inviting mere speculation; the prosecutor came close to making "unsupported factual

claims" and "assert[ing] that something not in the record [was] true." *United States v. Kojayan,* 8 F.3d 1315, 1321 (9th Cir.1993). "Such ... tactics are unbecoming a prosecutor.... The prosecutor's job isn't just to win, but to win fairly, staying well within the rules." *Id.* at 1323.

Nevertheless, given the overwhelming evidence produced against Gossman, we cannot say that the prosecutor's statements "undermined" the fairness of the trial. *United States v. Young,* 470 U.S. 1, 16 n. 4, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). Therefore, although the prosecutor's closing arguments were, in part, improper, reversal of Gossman's conviction is not warranted. *United States v. Christophe,* 833 F.2d 1296, 1301 (9th Cir.1987).[1]

8. The prosecutor did not prejudice Gossman's trial by cross-examining him regarding alleged statements made by agents during a 1997 investigation of a motel room search in which he took part. Although several objections were sustained, the line of questioning overall was relevant and permissible in impeaching Gossman's character. Any errors certainly did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quotation and citation omitted).

9. There was no sentencing error in enhancing Gossman's sentence 2 levels for obstruction of justice. The jury verdict supports the enhancement, as the jury necessarily must have believed that some of Gossman's testimony was untruthful in convicting him of intent to defraud. *See United States v. Smith,* 387 F.3d 826, 832 (9th Cir.2004).

Gossman also challenges his 10–level sentencing enhancement and the base offense level imposed in his case. Because Gossman did not challenge his sentence on Sixth Amendment grounds in the district court, we grant a limited remand pursuant to *United States v. Ameline,* 409 F.3d 1073, 1083–85, slip op. at 26–29 (9th Cir. 2005) (en banc).

**AFFIRMED IN PART; REMANDED IN PART.**

---

**1.** We note that Assistant United States Attorney Mark Rehe's involvement in this case was limited to briefing and arguing the appeal.