NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 9 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-30061 |
| Plaintiff-Appellee, | D.C. No. 3:13-cr-00080-SLG-1 |
| v. | |
| MICHAEL BUTLER, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

Submitted August 2, 2016[**]
Anchorage, Alaska

Before: FISHER, PAEZ, and HURWITZ, Circuit Judges.

Michael Butler was convicted after a jury trial of ten counts of mail fraud, 18

U.S.C. § 1341, one count of conspiracy to launder money, 18 U.S.C. § 1956(h), and

one count of conspiracy to make false statements regarding the distribution of

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

cigarettes, 18 U.S.C. §§ 371, 2342(b), 2344(b). Butler challenges the district court's refusal to compel the testimony of his codefendant and former stepdaughter, Kim Sims-Crandell, who had pleaded guilty but was awaiting sentencing. He also argues that there was insufficient evidence to satisfy the mailing requirement of 18 U.S.C. § 1341. We affirm.

1. As Butler recognizes, *Mitchell v. United States* holds that the Fifth Amendment privilege against self-incrimination extends through sentencing. 526 U.S. 314, 325-27 (1999). He argues, however, that we should exempt from the *Mitchell* rule witnesses who, like Sims-Crandell, have entered plea agreements under Federal Rule of Criminal Procedure 11(b) in which the government has agreed to a particular sentencing recommendation.

2. We disagree. "The purpose of Rule 11 is to inform the defendant of what she loses by forgoing the trial, not to elicit a waiver of the privilege for proceedings still to follow. A waiver of a right to trial with its attendant privileges is not a waiver of the privileges which exist beyond the confines of the trial," including the "right to remain silent at sentencing." *Id.* at 324, 325. Thus, "[a] convicted but unsentenced defendant retains his Fifth Amendment rights." *United States v. Paris*, 827 F.2d 395, 399 (9th Cir. 1987). The district court was not required to follow the government's sentencing recommendation, and incriminating testimony elicited from Sims-Crandell could have established relevant conduct for sentencing

2

purposes. *See* U.S. Sentencing Guidelines Manual § 1B1.3 (U.S. Sentencing Comm'n 2015). The district court therefore did not err in concluding that Sims-Crandell "could legitimately refuse to answer essentially all relevant questions" and refusing to compel her testimony. *United States v. Klinger*, 128 F.3d 705, 709 (9th Cir. 1997) (quoting *United States v. Tsui*, 646 F.2d 365, 368 (9th Cir. 1981)).

3. "There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud . . . and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme." *Schmuck v. United States*, 489 U.S. 705, 721 (1989). "To be part of the execution of the fraud, however, the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be incident to an essential part of the scheme, or a step in the plot." *Id.* at 710-11 (alterations, citations, and quotation marks omitted). Butler argues that the fraudulent scheme was "complete each time [he] received cigarettes from the wholesalers," and that the tax returns submitted by wholesalers detailing the number of cigarettes sold that were exempt from Anchorage's excise tax were therefore not mailed in furtherance of that scheme. The Court rejected a virtually identical argument in *Schmuck*. In that case, the defendant purchased used cars, rolled back their odometers, and sold the cars to retail dealers at inflated prices. 489 U.S. at 707. The innocent dealers then resold the cars to customers, and mailed title applications—legally required in order to transfer title of the cars—to the state

3

Department of Transportation. *Id.* In rejecting Schmuck's argument that the mailings were "routine and innocent" and made "after the fraud ha[d] come to fruition," the Court found that the scheme was an "ongoing fraudulent venture" which "would have come to an abrupt halt if the dealers either had lost faith in Schmuck or had not been able to resell the cars obtained from him." *Id.* at 711-12. The tax returns here were likewise "a step in the plot" "essential to the perpetuation" of the ongoing fraudulent scheme. *Id.* (alteration and quotation marks omitted).

**AFFIRMED.**