UNITED STATES of America,
Plaintiff–Appellee,

v.

Francisco HERNANDEZ–CARRILLO,
a/k/a Lucio Carrillo–Cabrera, a/k/a
Francisco Carrillo–Hernandez, Defendant Appellant.

No. 01–6109.

United States Court of Appeals,
Tenth Circuit.

Dec. 27, 2001.

Before EBEL and HENRY, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.

### ORDER AND JUDGMENT *

McWILLIAMS, Senior Circuit Judge.

By superseding indictment filed October 18, 2000, Francisco Hernandez–Carrillo ("the defendant") was charged in a three-count indictment as follows: Count 1, conspiring in August, 1999, with others to possess with an intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; Count 2, possessing on August 26, 1999, with an intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1); and in Count 3, with making a false statement in connection with the acquisition of a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). By pre-trial order the district court severed Count 3 from Counts 1 and 2 for trial purposes. A jury trial thereafter ensued on Counts 1 and 2 and resulted in a conviction on both counts. A pre-sentence report set defendant's base offense level at 26, which with a recommended criminal history category of III, resulted in a guideline range of

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

imprisonment for 78 to 97 months and three to five years of supervised release. The district court sentenced the defendant to imprisonment for 78 months and four years of supervised release on each of the two counts, to be served concurrently. (Subsequent thereto, on motion of the United States, the district court dismissed the third count of the superseding indictment.)

On appeal, defendant's only contention is that the four years of supervised release sentence violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We disagree and therefor affirm.[1]

In August, 1999, DEA agents received information that one Morales was distributing multi-kilogram amounts of cocaine in the Oklahoma City, Oklahoma, area. On August 25 and 26 a confidential informant for the DEA placed several recorded telephone calls to Morales to arrange for the purchase of cocaine. On August 26 the informant told Morales that he wanted to buy a half kilogram (500 grams) of cocaine and would pay $10,000.00 for it. Morales indicated that he and his source would prefer to sell an entire kilogram for $19,500.00, but ultimately Morales agreed to sell the confidential informant the half kilogram. They agreed to meet at Morales' residence in Oklahoma City. The informant and an undercover DEA agent arrived by car at Morales' residence. The informant left the agent's car and met with Morales and another Hispanic male in front of Morales' home. After a short conversation the informant returned to the agent's vehicle and told the agent that Morales and the other person were willing to sell them the half kilogram and that the unidentified Hispanic male would pick up the cocaine and bring it back to Morales' home. That person was then observed by the agent driving away from Morales' residence in a brown 1994 Chevrolet pick-up truck bearing Texas license plates. When that person returned, he was observed carrying a package from his car. Morales, and the as yet unidentified Hispanic male, went inside Morales' home and five minutes later Morales came out carrying a small dark box. The informant, who had been waiting on the porch, and Morales approached the agent and gave the agent the half kilogram of cocaine in exchange for $10,000.00. The agent and informant then drove away and no arrests were made at that time. In the meantime, Morales and the unidentified Hispanic male went back in Morales' home, where Morales gave $9,500.00 to the unidentified Hispanic male and kept $500.00 for himself.

At trial the primary question was the identity of the Hispanic male who supplied the cocaine to Morales, who, in turn, sold it to the agent. The agent, who had first observed the unidentified Hispanic male in the front yard of Morales' residence and then saw him drive away in the brown Chevrolet truck, testified at trial that it was the defendant. Pursuant to a plea agreement in another case, Morales testified, as a government witness at defendant's trial, that his supplier of the cocaine for the August 26th sale was the defendant, although he was known to him as simply "Pancho."

At trial, the defense theory of the case was that this was a case of mistaken identity, and that the other "unidentified Hispanic male" was not the defendant, but someone else. Although the defendant did not testify, several family members testi-

---

1. Both parties to this appeal waived oral argument and by order of court the case was submitted on the briefs.

fied that on August 26, 1999, the defendant was in Dallas, Texas, in connection with his sister's birthday. There also was testimony that a license check of the brown Chevrolet truck disclosed that the vehicle belonged to the defendant, although it was registered to defendant's brother-in-law.

*Apprendi* predated the trial of the instant case, and counsel and the district court were well aware of *Apprendi.* During trial, the United States and counsel for the defendant entered into a stipulation which provided that a government's forensic chemist would, if called, testify that the substance involved in the alleged sale by defendant to a government undercover agent was cocaine, a Schedule II controlled substance, and that it had a net weight of 501.4 grams. The stipulation was read to the jury. Out of the presence of the jury, at a hearing before the district court in connection with jury instructions and forms of verdict, counsel for the United States and counsel for the defendant agreed that, under their stipulation, 501.4 grams of cocaine were involved in the alleged sale on August 26, 1999. (See Attachment A.) Neither party requested instructions or a form of verdict that would require the jury to determine the quantity of cocaine involved in the August 26th transaction, and, accordingly, the jury was not instructed to determine the quantity of the substance involved in the alleged August 26th sale, nor, for that matter, the nature of the substance itself.

On appeal, counsel for defendant frames the one issue to be resolved on appeal as follows:

> Because Mr. Hernandez stipulated, not to an element of the offense, but only to what the government chemist would testify, the district court committed plain error in failing to instruct the jury that it had to find the quantity of drugs beyond a reasonable doubt, and because

Mr. Hernandez' substantial rights were affected, this court should exercise its discretion to notice the error.

On appeal, counsel, who did not represent defendant at trial, agrees that trial counsel did not object to any of the district court's instructions to the jury nor did he offer any instructions, or any form of verdict, requiring the jury to determine the quantity of cocaine involved in the August 26th transaction. In other words, as we understand it, counsel in this court concedes that trial counsel agreed with opposing counsel, as well as with the district court, that because of the stipulation there was no need to have the jury determine the quantity of cocaine involved in that sale. Nonetheless, on appeal, counsel does argue that such failure constituted plain error. As concerns plain error, the Supreme Court in *Johnson v. United States,* 520 U.S. 461, 466–67 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), commented as follows:

> We therefore turn to apply here Rule 52(b) as outlined in *[United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)].* Under that test, before an appellate court can correct an error not raised at trial, there must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights." 507 U.S., at 732. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error " ' "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." ' " *Ibid.* (quoting *United States v. Young, supra,* [470 U.S. 1,] 15, [, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)]) in turn quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936).

In *Apprendi,* the Supreme Court spoke as follows:

In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones[ v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)]. *Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.* With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt" 526 U.S. at 252–253 (opinion of STEVENS, J.); *see also Id.* at 253 (opinion of SCALIA, J.).

*Id.* 530 U.S. at 490 (emphasis added).

As we understand it, counsel in this Court argues that, notwithstanding any agreement between counsel and the district court, the district court erred in not submitting for jury consideration and determination the issue of the quantity of cocaine involved in the sale of cocaine by Morales and the defendant to the confidential informant and the undercover agent on August 26, 1999. According to counsel, because the jury did not determine that the quantity of cocaine involved in the August 26 transaction was "in excess of 500 grams of cocaine," 21 U.S.C. § 841(b)(1)(B) (a so-called Class B felony) did not apply to the present case and that the defendant could only be sentenced un-

der 21 U.S.C. § 841(b)(1)(C) (a so-called Class C felony). The supervised release provisions of 21 U.S.C. § 841(b)(1)(B) (Class B felony) required a term of supervised release "of at least four years ...," whereas 21 U.S.C. § 841(b)(1)(C) (Class C felony) only required a term of supervised release "of at least three years...."[2] The defendant in the instant case was sentenced, *inter alia*, to a four-year term of supervised release on each of two counts, which sentences were in accord with 21 U.S.C. § 841(b)(1)(B), but were *one year in excess* of the minimum required by 21 U.S.C. § 841(b)(1)(C). Such being the case, counsel argues that the district court's judgment and order that the defendant be on supervised release for a four year term should be vacated, the matter remanded to the district court, and that the district court should then consider whether it should only sentence defendant to a term of three years of supervised release, as permitted by 21 U.S.C. § 841(b)(1)(C). This argument was obviously not presented to, or considered by, the district court, since the parties agreed that the amount of cocaine involved in the August 26, 1999, transaction was 501.4 grams, an amount in excess of 500 grams required for sentencing under 21 U.S.C. § 841(b)(1)(B).

To summarize counsel's position in this Court, since the jury did not determine by its verdict that the quantity of cocaine involved in the August 26, 1999, transaction was in excess of 500 grams, the defendant should have been sentenced under 21 U.S.C. § 841(b)(1)(C), which provides for a term of supervised release of "at least

---

2. U.S.S.G. § 5D1.2.(a)(1) provides that a term of supervised release for a Class B felony is "at least three years but not more than five." § 5D1.2(a)(2) provides that the term of supervised release for a Class C felony is "at least two years, but not more than three years...."

However, § 5D1.2(b) provides that "[e]xcept as otherwise provided, the term of supervised release imposed shall not be less than any statutorily required term of supervised release."

three years," and the district court, after remand, should be required to consider that option, i.e., three years of supervised release instead of four, it appearing that the district court sentenced defendant to a term of supervised release of four years under the mistaken belief that 21 U.S.C. § 841(b)(1)(B), requiring at least a term of four years of supervised release, applied. Such is based on counsel's belief that under *Apprendi*, the district court erred in failing to instruct and have the jury determine the amount of cocaine involved in the August 26, 1999, transaction, that such, though not objected to by the defendant's counsel in the district court, constitutes "plain error" which affected substantial rights of the defendant, and that this Court should exercise its discretion to notice a "forfeited error" since such seriously affected the "fairness, integrity or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467. Our study of the matter leads us to conclude that the present case does not come within the ambit of *Apprendi*.

Under *Johnson*, before we can correct an alleged error not raised at trial, we must first decide the obvious, was there, in fact, an error committed at trial. If there was no error committed, we need not consider the "plain error" argument. In this regard, we conclude that under the circumstances, the district court in the instant case committed no error in not instructing the jury that it should determine the quantity of cocaine involved in the August 26, 1999, transaction. *Apprendi* does not require that the quantity of the controlled substance must always be determined by the jury. The parties can still stipulate and agree as to the quantity of drug involved in a drug sale, in which case that issue need not be submitted to the jury by appropriate instructions and form of verdict. *See United States v. Jackson*, 240 F.3d 1245, 1249 (10th Cir.2001)(*cert.*

*denied*); *United States v. Mason*, 85 F.3d 471, 472 (10th Cir.1996).

We agree with counsel that the stipulation as to what the government's forensic chemist would testify to if he were called as a government witness did not amount to a stipulation by trial counsel that the cocaine involved was in excess of 500 grams, namely 501.4 grams. However, subsequent thereto, when counsel and the district court were discussing the instructions to be given the jury, there was agreement between government counsel and trial counsel that the quantity of cocaine involved in the August 26th transaction was 501.4 grams, an amount in excess of 500 grams. Indeed, present counsel for defendant in her opening brief in this court (top p. 6) states that the trial counsel "agreed" to government counsel's statement that the quantity of cocaine involved in the August 26th transaction was "in excess of 500 grams" and that "that element is satisfied by stipulation and the jury does not need to make a finding on that."

Judgment affirmed.

## ATTACHMENT A

(THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN COURT, OUT OF THE PRESENCE AND HEARING OF THE JURY:)

THE COURT: Mr. Ruffin [defendant's trial counsel] and all counsel are now present in the courtroom.

You have all discussed the instructions with my law clerk this morning. I did not ever meet with you because she tells me there are no objections, that everybody is happy with the set that we proposed. Is that correct? Are there any objections to the instructions? Ms. Smith?

MS. SMITH: No, Your Honor, not from the government.

ATTACHMENT A—Continued

THE COURT: And Mr. Ruffin?

MR. RUFFIN: No, ma'am.

THE COURT: We spoke briefly yesterday about the requirement that the jury find the amount of drugs if they find the defendant guilty. Since counsel stipulated, it was my suggestion that that's all the proof that's necessary. Apparently you're now in agreement with that?

MS. SMITH: Yes, Your Honor, we are in agreement that based upon the stipulation, that there was a stated quantity in excess of 500 grams involved in the transaction on August 26th, that that element is satisfied by stipulation and the jury does not need to make a finding on that.

MR. RUFFIN: And that would be as per the stipulation, Judge. I believe it's 538. I'm not sure. Whatever the stipulation would be as to that particular amount.

MS. SMITH: The stipulation is filed with the Court and I believe the quantity is a total of 500.8 grams after analysis.

THE COURT: All right.

MS. SMITH: It was an amount in excess of that with the wrapping.

THE COURT: In this case, we don't have the usual conspiracy lasting a length of time involving many sales and with some uncertainty as to exactly how much was involved. We have one sale. We have the drugs here in the courtroom, or did have yesterday, and we have a stipulation from counsel. If you two are in agreement that is sufficient under Apprendi, it certainly seems to me that it should be and I will not submit it separately.

ATTACHMENT A—Continued

MR. SMITH: I misstated. It's 501.4 grams, which greatly exceeds the amount I stated previously.

THE COURT: All right. You've also reviewed the verdict from and have no objection to the verdict form? Ms. Smith?

MS. SMITH: No, Your Honor.

THE COURT: And Mr. Ruffin?

MR. RUFFIN: No, Your Honor.