HARTZ, Circuit Judge,
concurring:
I.
I join Judge Tacha’s opinion for the court. I write separately to focus on how the remedy provided by Booker affects plain-error review.
II.
Defendant’s sentence must be affirmed. Relief under the plain-error doctrine is not proper, because a remand for resentencing would not advance fairness or the integrity of judicial proceedings and would more likely injure the reputation of the courts than improve it. Defendant was sentenced in accordance with national norms incorporated within sentencing guidelines established by a sentencing commission whose charter for two decades has been to improve the fairness and uniformity of sentencing in the federal courts. To remand for resentencing in the absence of evidence in the record that the guideline range would be inappropriate for this defendant would serve only to permit the district court to deviate from those guidelines in the exercise of an idiosyncratic personal view of fairness. Nothing in the record suggests that the guidelines have failed to accommodate a significant feature of Defendant’s crime or personal history, and the original sentence was not unreasonable. My reasoning follows:
“No procedural principle is more familiar ... than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.” United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotation marks omitted). Nevertheless, there is also a long tradition of correcting unpre-served errors in limited circumstances. Fed.R.Crim.P. 52(b) states: “Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.” Under the plain-error doctrine a defendant who has failed to preserve a claim of error in district court is entitled to relief only when (1) the district court committed error under the law in effect at the time the appeal is heard, (2) the error is obvious under that law, and (3) the error affected the defendant’s substantial rights. Rule 52(b) then “leaves the decision to correct the *745 forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings.” Olano, 507 U.S. at 732, 113 S.Ct. 1770 (internal quotation marks omitted).
The first two prongs of the plain-error test are not disputed in this case. Most of the appellate decisions regarding plain error in Boo/cer-issue cases have focused on the third prong — the effect of the error on the defendant’s substantial rights. But because of the unusual nature of the Booker decision, addressing the propriety of the exercise of discretion (what I will refer to as the fourth prong) may often enable the appellate court to avoid the troubling third-prong issues that have divided the other circuits.
What was unusual about the Booker decision was the disconnect between the constitutional violation and the remedy. To be sure, the remedy (making the Sentencing Guidelines advisory only) cures the constitutional violation (permitting the judge to find by a preponderance of the evidence the facts necessary to impose a sentence of such severity). Ordinarily, however, the cure for a constitutional violation is more direct: If the court improperly instructed the jury, the case must be retried with a proper instruction; if inadmissible evidence was presented to the jury, the case must be retried without the evidence, etc. In those cases if a constitutional error — such as the admission of evidence barred by the Confrontation Clause — affected the Defendant’s substantial rights (thus satisfying prong three of the plain-error test), it is ordinarily natural to conclude that the fourth prong is also satisfied and reversal is necessary in the interest of fairness, integrity, and the public reputation of judicial proceedings. Not to reverse to correct the error is to ignore the injury the defendant suffered from the violation of his or her constitutional rights.
Such would also be the appropriate approach had the remedial opinion in Booker been otherwise. If, say, the Supreme Court had decided that the cure for Booker error was to require a retrial at which the jury would have to find beyond a reasonable doubt all facts needed to determine the offense level used to calculate the guideline range, then the fourth prong would ordinarily be satisfied if the defendant had been prejudiced by the trial judge’s making a critical finding by a preponderance of the evidence.
But that was not the remedy adopted in Booker. Even if the judge had made no critical finding, a defendant who preserved error is entitled to resentencing with the guidelines no longer being mandatory. And when the judge did make a critical finding, the remedy is not to set aside the improper finding but, again, only to require resentencing under a discretionary-guideline regime. As I shall explain, this is highly significant in applying plain-error’s fourth prong. As stated in Olano, discretion should not be exercised to correct a forfeited error “unless the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.” Olano, 507 U.S. at 732, 113 S.Ct. 1770 (internal quotation marks omitted). This language may suggest that in exercising discretion whether to correct the error, the appellate court should look only backwards — at, say, the unfairness or damage to the reputation of judicial proceedings caused by the error in the district court. But surely the underlying concerns are simply fairness, integrity, and the public reputation of the courts. And those virtues can also be viewed in light of the remedy to be provided for the error — in other words, by looking forward to see *746 whether correcting the error will advance those ends. If granting the appellant the relief to which he or she would be entitled had the issue been preserved in district court would not advance the fairness, integrity, or public reputation of judicial proceedings, why should the appellate court exercise its discretion to grant that relief? In this regard, I think it noteworthy that in rejecting relief under the plain-error doctrine in a fairly recent case, the Supreme Court observed that “it would be the reversal of a conviction such as this [and not affirmance] which would [seriously affect the fairness, integrity or public reputation of judicial proceedings].” Johnson v. United States, 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).
Thus, it seems to me essential in plain-error Booker cases to determine whether reversal and remand for resentencing by a judge under a discretionary-guideline regime would advance fairness, integrity, or the public reputation of the courts. To resolve the issue requires examination of what purpose would be served by a remand to allow the sentencing judge to deviate from the sentencing range set by the guidelines.
The federal sentencing guidelines, it must be remembered, were the product of concern about the unfairness arising from deviations in sentencing that could be attributed only to the idiosyncracies of individual judges. Prior to enactment of the Sentencing Reform Act of 1984, the broad discretion enjoyed by sentencing judges “led to perceptions that ‘federal judges mete out an unjustifiably wide range of sentences to offenders with similar histories, convicted of similar crimes, committed under similar circumstances.’ ” Koon v. United States, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), quoting S.Rep. No. 98-225, p. 38 (1983). Such perceptions could only damage the reputation of the courts. The 1984 statute was intended to reduce the problem. Writing for the Court in United States v. Booker, — U.S. -, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), Justice Breyer spoke of “the increased uniformity of sentencing that Congress intended the Guidelines system to achieve.” Id. at 757. See also id. at 785 (Stevens, J. dissenting) (‘“[T]he core function of the guidelines and the underlying statute ... is to reduce disparity in sentencing and restore fairness and predictability to the sentencing process.’ ” (quoting 133 Cong. Rec. 33109 (1987) (remarks of Sen. Hatch))); id. at 789 (Scalia, J., dissenting) (“Justice Breyer’s opinion for the Court repeatedly acknowledges that the primary objective of the Act was to reduce sentencing disparity.”). That purpose survives Booker although, of course, the discretion now granted to sentencing judges will decrease uniformity.
To further the objectives of fairness and uniformity, the Sentencing Commission has labored for two decades to establish national norms for sentencing. See Mistretta v. United States, 488 U.S. 361, 369-70, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (summarizing responsibilities of the Commission). These norms reflect the factors that should appropriately be considered in sentencing and the weight to be given those factors. The sentencing judge pre-Booker could depart from the guidelines sentencing range, but only when “the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.” 18 U.S.C. § 3553(b)(1). See generally Koon, 518 U.S. at 92-96, 116 S.Ct. 2035 (describing operation of guidelines). No doubt many sentencing judges have disagreed with the guidelines ranges *747 in particular cases. But Congress, surely aware of the potential for the guidelines to offend the sensibilities of sentencing judges, chose uniformity as worth that cost.
What, then, is accomplished by remanding for resentencing when the sentencing judge’s original fact findings are not questionable and the court correctly applied the Sentencing Guidelines? That depends. In some circumstances it will be apparent from the record on appeal that the guidelines process has failed — that the result is objectively unreasonable. To remand for resentencing in such circumstances may be necessary to advance “fairness, integrity, and the public reputation of judicial proceedings.” In the great bulk of cases, however, no such unfairness appears, and the sole purpose of a remand for resen-tencing would be to allow one party or the other to benefit from the idiosyncratic views of the particular judge. Remanding for resentencing in such circumstances may be “fair” in the eyes of the sentencing judge and the prevailing party, but a sentence outside the national norms set by the guidelines is not fair when viewed from the perspective of the federal criminal justice system as a whole, and the process of remanding to create sentencing disparities will injure “the public reputation of judicial proceedings.”
This view is not contrary to the mandate in Booker. Booker recognizes the injustice of disparate sentencing. To be sure, the mandate will result in greater sentencing disparities. But that is an undesirable consequence of the Supreme Court’s ruling, not the ruling’s goal. Although disparities may be a necessary, unavoidable consequence of granting relief to those who preserved an Apprendi or Blakely argument at sentencing, the plain-error doctrine does not require that consequence to be magnified by granting relief to those who did not preserve below the claims they are raising with us.
Turning to the present case, nothing in the record suggests that Defendant’s original sentence was unreasonable. The fourth prong of the plain-error test not being satisfied, the sentence must be affirmed.