[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 4, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-10303
Non-Argument Calendar

_____

D. C. Docket No. 04-00048-CR-ODE-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIECE SIMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 4, 2006)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Mariece Sims appeals his convictions and sentences for kidnapping, in

violation of 18 U.S.C. § 1201; sex trafficking of a minor by coercion and transporting of a minor in interstate commerce for purposes of prostitution, in violation of 18 U.S.C. §§ 1591 and 2423(a); and transporting and coercing a person for purposes of prostitution, in violation of 18 U.S.C. §§ 2421 and 2422(a).[1] Sims argues (1) that there was insufficient evidence to convict him because the government failed to provide sufficient evidence that he used force against the victim or that he knew the victim was a minor; (2) that the district court erred in allowing the government to introduce evidence of a prior sexual assault by him because he was not charged with sexual assault and the evidence was unfairly prejudicial; and (3) that he should be resentenced under Booker.

## I. Background

At trial, the evidence was as follows: Sims and his co-defendant, Dwayne Thigpen, encountered the victim, Erica Owens, while selling clothes in El Dorado, Arkansas. Sims knew Owens, and Owens entered their car willingly. The three of them drove around and smoked marijuana; Owens eventually fell asleep in the back seat. Owens testified that she awoke to discover they were no longer in El

---

[1] The indictment also charged Sims with obtaining the labor of another by force or threat of force, in violation of 18 U.S.C. § 1589; conspiring to tamper with the victim-witness or obstruct justice, in violation of 18 U.S.C. §§ 371, 1512(b)(1), and 1512(c)(2); witness tampering, in violation of 18 U.S.C. § 1512(b)(1); and obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2). The jury acquitted Sims of the above charges.

Dorado, although she believed Sims would take her home.

The three were in a car accident in Texarkana. When the police reported to the accident, Owens did not tell them she had been kidnapped; nor did she try to escape. Owens testified that when the accident occurred, she did not seek the help of police because she still believed that Sims would return her to El Dorado. Owens further testified that Sims and Thigpen raped her in their hotel room in Texarkana. The three next traveled to Mississippi, where, according to Thigpen,[2] Sims told Owens to see if she could make some money at the hotel; Owens returned with $20, which she gave to Sims.

Sims later drove to a truckstop where he instructed Owens to prostitute herself. Owens returned several times without money, at one point claiming that a trucker tried to choke her. They next drove to Atlanta, and Sims dropped Owens off at a flea market on Metropolitan Parkway, an area popular with prostitutes. Sims bought Owens thongs, a miniskirt and some small shirts and again dropped her off on Metropolitan Parkway. Thigpen testified that he and Sims watched Owens as she waited for customers. Eventually, Owens returned with money for Sims. At one point, Owens disappeared. Owens testified that she had tried to escape three times. She stated that she had gone to a police station, where she was

---

[2] Thigpen pleaded guilty to transporting a minor across state lines and testified as a cooperating government witness.

told to wait. She became tired and went outside, where Sims found her. Sims slapped her, told her not to disappear again, and continued to send her out on the street.

Thigpen testified that he told Sims that he did not think Owens wanted to prostitute herself. Sims said Owens was "his girl" and that he would "handle" her.

Eventually, Owens was picked up by Atlanta Police Officer Freddie Jenkins, Jr. Jenkins testified that he picked up Owens because she looked so young and further that he saw a dark SUV circling the block where Owens had been standing. Owens initially told him Jenkins she was 14 years old, although she revised that to 16 years old when they arrived at the police station. Jenkins took Owens to the hotel where she had been staying with Sims and Thigpen, and she identified both Sims and his SUV.

C.R. Whitmire, an investigator with the child exploitation unit of Atlanta's police department, testified that Owens was smelly, shaking and wore little clothing when she was picked up by police. Whitmire had a rape kit administered to Owens. Georgia Bureau of Investigation expert Lisa Hobgood testified that the semen from Owens's rape kit did not match either Sims or Thigpen.

After Owens returned home, Olivia Glosson, Sims's girlfriend, who is related to Owens by marriage, urged Owens to drop the charges against Sims.

4

Owens agreed and provided two affidavits to the El Dorado prosecutor recanting the statement she had made to the Atlanta police. At trial, Owens admitted that the affidavits were false.

The district court admitted the testimony of Sherlon Derks, the alleged victim of a prior sexual assault by Sims, but instructed that the witness could provide only a cursory review of the prior crime. Derks testified that one night while she was dating Sims, he had "snapped" and beat and raped her. Although Sims was arrested, she requested that the charges be dropped after Sims and his family threatened her.

Sims failed to move for judgment of acquittal, either at the close of the government's case or after the defense rested.

In addition to convicting Sims, the jury made the following specific findings: that Owens was a vulnerable victim, that she had been sexually exploited, that the offense involved the use of coercion and involved commercial sex, that Sims knew or should have known that the victim was a minor, and that Sims was a leader or organizer.

The probation officer prepared a presentence investigation report ("PSI"), assigning a base level of 32 for the kidnapping offense. See U.S.S.G. § 2A4.1. Based on the jury's special findings, this was increased by one level because the

5

victim was not released before seven days had elapsed, see U.S.S.G. § 2A4.1(b)(4)(B), by six levels because the victim was sexually exploited, see U.S.S.G. § 2A4.1(b)(5), by two levels because Owens qualified as a vulnerable victim under U.S.S.G. § 3A1.1, and by an additional two levels because Sims was a leader or organizer under U.S.S.G. § 3B1.1(c). The remaining counts were grouped together and assigned a base offense level of 19 under U.S.S.G. § 2G1.1, with a four-level increase for influencing a minor regarding commercial sex under U.S.S.G. § 2G1.1(b)(4)(B), and another two-level increase for Sims's role as leader under U.S.S.G. § 3B1.1(c). Sims's guidelines range was life in prison.

At sentencing, the district court stated that "the court does have to give you a life sentence in this case so that is what I'm going to do." The court further stated that "[i]f I had a choice, I might not give you a life sentence. But I have to do it under the guidelines."

## II. Standard of Review

Although this Court ordinarily reviews challenges based on sufficiency of the evidence de novo, United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995), where, as here, a defendant has failed to move for judgment of acquittal at the close of the government's case and the close of the evidence, we "may reverse only to prevent a manifest miscarriage of justice." United States v. Adams, 91

F.3d 114, 116 (11th Cir. 1996) (citing United States v. Hamblin, 911 F.2d 551, 556-57 (11th Cir. 1990)). "The manifest miscarriage of justice standard 'require[s] a finding that the evidence on a key element of the offense is so tenuous that a conviction would be shocking.'" Id. (citing United States v. Tapia, 761 F.2d 1488, 1492 (11th Cir. 1985)).

This Court reviews a district court's evidentiary rulings for abuse of discretion. United States v. Magluta, 418 F.3d 1166, 1177 (11th Cir. 2005).

## III. Discussion

### A. Sufficiency of the Evidence

Sims first argues that no reasonable jury could have found him guilty of using force to kidnap Owens because the evidence established that Owens failed to ask the police for assistance after the accident and that she had opportunities to escape in Atlanta and failed to do so. He also argues that the government failed to prove that he knew Owens was under the age of 18.

Here, the evidence established that Sims threatened to beat Owens if she did not make money and that Owens gave money she made to Sims. In addition, Sims slapped Owens at least once. Sims watched as Owens prostituted herself on Metropolitan Parkway. Although the evidence was not overwhelming on the coercion point, the jury's verdict did not rise to the level of manifest injustice.

To establish Sims's guilt on the sex trafficking of a minor count, the government had to show that Sims benefitted financially from Owen's sexual activity and that Sims knew that (a) force or coercion would be used to cause Owens to engage in a criminal sex act <u>or</u> (b) that Owens was under the age of 18. 18 U.S.C. § 1591. Moreover, the jury found Owens's and Thigpen's testimony to be credible, which is within the jury's exclusive province. <u>United States v. Parrado</u>, 911 F.2d 1567, 1571 (11th Cir. 1990). Here, the record contained sufficient evidence to support Sims's convictions.

B. Prior Sexual Assault Evidence

Sims next argues that the district court abused its discretion by admitting Derks's testimony regarding an alleged past sexual assault under Rule 413 of the Federal Rules of Evidence because Sims was not charged with sexual assault in the instant case. He also argues that the evidence was inadmissible pursuant to Rule 404(b) because its unduly prejudicial effect substantially outweighed any probative value it might have.

Other crimes evidence "is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Fed. R. Evid. 404(b).

8

To determine the admissibility of evidence pursuant to Rule 404(b), this Court requires that the evidence is "relevant to an issue other than the defendant's character," that there is "sufficient proof so that a jury could find that the defendant committed the extrinsic act," and that the evidence "possess[es] probative value that is not substantially outweighed by its undue prejudice" and otherwise meets the requirements of Rule 404(b). United States v. Miller, 959 F.2d 1535, 1538 (11th Cir. 1992).

Here, the two affidavits Owens filed in an attempt to have the charges in the instant case dropped put her credibility in doubt. Derks's testimony regarding Sims's and his mother's conduct in coercing her to drop her charges is thus highly probative with respect to the witness tampering and obstruction of justice charges. Moreover, the district court limited the prejudicial effect of Derks's testimony by requiring that she not provide details regarding the alleged rape. Accordingly, the probative value of Derks's testimony was not substantially outweighed by undue prejudice, and her testimony was admissible.

C. Sentencing

Finally, Sims argues that his case must be remanded for resentencing in light of Booker because the district court believed it was obligated to give him a life sentence under the guidelines.

9

Because Sims did not preserve this objection, we review for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005). We find plain error where "(1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Id.

This Court recognizes two varieties of Booker error: constitutional errors that arise when a defendant's sentence is enhanced based on facts not found by the jury and statutory errors that arise when the defendant is sentenced under a mandatory guidelines regime. United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005). Here, there is no constitutional error, as the jury's special factual findings supported the sentencing enhancements.

The district court's statements, however, make clear that it applied the guidelines as mandatory. Although the error was not plain at the time of sentencing, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal . . . it is enough that the error be 'plain' at the time of appellate consideration." Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 1549 (1997). The court's error is now plain.

To establish plain error, a defendant also must show there is "a reasonable

10

probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Rodriguez, 398 F.3d at 1300. A defendant can establish this reasonable probability where the district court has made statements expressing frustration at the severity of the guidelines, United States v. Martinez, 407 F.3d 1170, 1174 (11th Cir. 2005), where the court indicated it would have sentenced the defendant to a lesser sentence if it had the authority to do so, United States v. Dacus, 408 F.3d 686, 689 (11th Cir. 2005), and where the court expresses dissatisfaction with the sentence required by the guidelines. United States v. Henderson, 409 F.3d 1293, 1307-08 (11th Cir. 2005). Here, the district court stated that, according to the guidelines, it was obligated to sentence Sims to life imprisonment and that it might not have handed down that sentence if it were not so obliged. These statements establish that the error affected Sims's substantial rights. Accordingly, we vacate and remand for resentencing under an advisory guidelines scheme.

AFFIRMED in part, VACATED in part, and REMANDED.