**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1517
_____

UNITED STATES OF AMERICA

v.

DAVID MCCLOSKEY,
                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-09-cr-00225-001)
District Judge: Honorable Joy F. Conti
_____

Submitted Under Third Circuit LAR 34.1(a)
January 15, 2015

Before: AMBRO, FUENTES, and ROTH, *Circuit Judges*

(Filed: April 8, 2015)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

David McCloskey challenges the procedural reasonableness of the District Court's imposition of a 120-month imprisonment sentence. For the reasons set forth below, we affirm.[1]

I.

In 1999, Kenneth Cowden, an acquaintance of McCloskey, began conducting fraudulently inflated real estate appraisals. Cowden circumvented Pennsylvania's requirement that real estate appraisers be licensed by using other appraisers' licenses. His fraudulent scheme also involved rendering inflated property values by using better neighborhoods for comparables and by making the property itself appear to be in much better condition that it actually was.

By late 2000 or early 2001, McCloskey was working for First Atlantic Financial ("First Atlantic"), a mortgage brokerage owned by his mother. While McCloskey's mother handled the payroll and directed its legal affairs, McCloskey was considered the day-to-day boss. Indeed, his subordinates referred to him as "King." When Cowden told McCloskey that he was appraising real estate for other mortgage brokers, McCloskey urged him to do the same for First Atlantic. In fact, McCloskey began paying Cowden $400 per appraisal upfront to prioritize First Atlantic's business.

When Cowden provided an inflated appraisal to First Atlantic, he would write "Ken's World" on the loan file to alert McCloskey that the appraisal was "beyond

---

[1] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. Because we write for the parties, we recite only those facts necessary to our conclusion.

reality" and that additional measures were needed to make it seem plausible. App. 244. For those appraisals, McCloskey and his subordinates would create bogus supporting documents which would exaggerate borrowers' income, overstate their assets, and mischaracterize their employment status.

This scheme continued until 2005, when federal agents appeared at Cowden's home. Cowden admitted his conduct, confessed that he had provided unlicensed and inflated appraisals to McCloskey and others at First Atlantic, and provided documents to substantiate his admissions. In addition, the subordinates working with McCloskey at First Atlantic also confessed to receiving fraudulent appraisals from Cowden while they worked for McCloskey.

In 2009, a grand jury indicted McCloskey of conspiring to commit mail fraud with Cowden and others "[f]rom in and around August 2004 and continuing thereafter until in and around April 2005." App. 9A-10A. Cowden pleaded guilty in June 2010. At the plea hearing, McCloskey's attorney clarified McCloskey was admitting only that he knew Cowden was an unlicensed appraiser and that McCloskey was not conceding that he hired Cowden to perform inflated appraisals. The District Court questioned McCloskey thoroughly regarding his potential sentence noting that he could be sentenced to the statutory maximum for his offense, which was 20 years in prison. The District Court explicitly stated: "So you understand that . . . you will still be bound by your guilty plea and will have no right to withdraw it even if your counsel made a mistake?," to which McCloskey responded affirmatively. App. 11.

The parties then began to prepare for sentencing and an initial Presentence Investigation Report was prepared. In August 2010, the Government alerted McCloskey that it would argue that he was responsible for the losses Cowden caused at First Atlantic and other brokerages. McCloskey moved to strike the Government's objections—which included its loss estimates—on the eve of the evidentiary hearing. The District Court denied McCloskey's motion to strike and held the evidentiary hearing. After the evidentiary hearing, McCloskey filed a counseled motion to withdraw his guilty plea, asserting his innocence to the crime charged in an affidavit affixed to the motion. App. 361. At a hearing on the motion, McCloskey withdrew his motion after he was reminded that the hearing could result in waiver of the attorney-client privilege and could potentially expose him to prosecution for perjury.

The District Court determined that, in calculating McCloskey's advisory Guidelines range, his offense level should be increased to account for: (1) his leadership role under U.S.S.G. § 3B1.1(a); (2) the fact that his fraud victimized more than 50 people under U.S.S.G. § 2B1.1(b)(2); (3) the sophisticated means he used to commit the fraud per U.S.S.G. § 2B1.1(b)(10)(C); and (4) his attempt to withdraw his guilty plea, which obstructed justice under U.S.S.G. § 3C1.1. In addition, the Court found that McCloskey failed to demonstrate his clear acceptance of responsibility for purposes of a reduction under U.S.S.G. § 3E1.1(a). The Court did, however, grant McCloskey's request for a downward variance, sentencing him to 120 months in prison. This timely appeal followed.

II.

4

We review the procedural reasonableness of a sentence under an abuse of discretion standard. When sentencing a defendant, the district court must follow a three-step analysis set forth in *Gall v. United States*, 552 U.S. 38 (2007). First, the district court must correctly determine the applicable guidelines range. Second, the court must determine whether to adjust the guidelines range. Third, it must consider all the factors set forth in 18 U.S.C. § 3553(a) as a whole, including whether a variance is warranted.

If we find no procedural error, we must "'then, at stage two, consider [the sentence's] substantive reasonableness.'" *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (quoting *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008)). The "touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc).

On appeal, McCloskey asserts two arguments: (1) that the District Court erred by misapplying the concept of "relevant conduct" in calculating the advisory Guidelines; and (2) that it erred in applying the obstruction-of-justice enhancement while refusing to give him credit for acceptance of responsibility. We address each claim in turn.

**A. The District Court Did Not Err in Considering Relevant Conduct.**

McCloskey argues that the District Court impermissibly considered conduct occurring prior to 2004 in determining whether to apply the leadership-role enhancement, the sophisticated-means enhancement, and the number-of-victims adjustment in calculating his offense level. Because McCloskey concedes that he failed to preserve this argument, we review this claim solely for plain error. To establish error under this

standard, McCloskey must prove that there was "(1) 'error,' (2) that is 'plain,' and (3) that [it] 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). Further, "[i]f all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if [] the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 732) (internal quotation marks omitted).

Here, McCloskey can prove that there was an error and that the error was plain. But the error was not in the District Court's interpretation of U.S.S.G. § 1B1.3(a)(1) in determining relevant conduct, but rather in its application of this section. As the Government contends, McCloskey's substantive offense was wire fraud, which is found in U.S.S.G. § 2B1.1(a)(1). Offenses governed by U.S.S.G. § 2B1.1 are subject to grouping. That being so, the Court should have used the definition of "relevant conduct" in U.S.S.G. § 1B1.3(a)(2), which permits it to consider "all acts and omissions described in subdivisions (1)(A) and (1)(B) . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Therefore, the first two prongs of *Olano* are met.

McCloskey, however, cannot prove the error affected his substantial rights. Because U.S.S.G. § 1B1.3(a)(2) encompasses a broader range of "relevant conduct," McCloskey's claim falters. Section 1B1.3(a)(2) defines "common scheme or plan" as covering conduct "substantially connected by at least one common factor, including common victims, common accomplices, common purpose, or similar modus operandi,"

6

and construes "same course of conduct" to mean actions "sufficiently connected or related to each other," and involving factors such as "the degree of similarity in offenses, the regularity or number of repetitions, and the time interval between offenses." U.S.S.G. § 1B1.3(a)(2) cmt. 9. The record is clear that this scheme was connected by "at least one common factor": Cowden, an unsavory real estate appraiser who operated illegally using other people's licenses. Indeed, while McCloskey argues that the District Court erroneously relied on the testimony of subordinates who ceased working at First Atlantic in 2003, this argument is belied by the fact that McCloskey continued the fraud with new employees and the same modus operandi. Accordingly, McCloskey fails to prove the District Court's error affected his substantial rights in applying U.S.S.G. § 1B1.3(a)(1) and considering pre-indictment conduct as "relevant conduct." The District Court was entitled to rely on this conduct in applying the leadership role, sophisticated means, and number-of-victims enhancements.

**B. The District Court Did Not Err in Declining to Credit McCloskey for Acceptance of Responsibility and Applying an Obstruction-of-Justice Enhancement.**

We now turn to McCloskey's second argument: that the District Court erred in failing to credit him for acceptance of responsibility, while applying an obstruction-of-justice enhancement for his withdrawn guilty plea. These arguments were preserved and we review them for clear error. *United States v. Siddons*, 660 F.3d 699, 707-08 (3d Cir. 2011). A finding is only clearly erroneous "when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction

7

that a mistake has been committed." *Grier*, 475 F.3d at 570 (internal alterations and citations omitted).

McCloskey argues that the obstruction-of-justice enhancement for withdrawing his guilty plea was inappropriate. The Guidelines authorize an increase in a defendant's offense level if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the [. . .] prosecution." U.S.S.G. § 3C1.1. Furthermore, this enhancement applies to defendants who commit perjury. *Id.* cmt. n.4(B). When applying U.S.S.G. § 3C1.1, "the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or fault memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." *Id.* cmt. n.2.

McCloskey does not deny that the sworn statements he made in his affidavit were false. Instead, he asserts that, "[i]t is not unreasonable for confusion to set in after [he] pleaded guilty believing one set of facts to be true only to find out after the guilty plea that the stakes have been exponentially raised." Appellant's Br. 47. He contends he "did not intend to obstruct justice by filing a motion to withdraw his guilty plea and asserting his innocence." *Id.* McCloskey's assertions of "confusion" and "fear," however, fail. McCloskey was not confused that he was providing false testimony. Rather, he knew his testimony was false when he was giving it. A defendant who perjures himself in an attempt to withdraw his guilty plea obstructs justice. Thus, the District Court did not err in applying this enhancement.

Finally, we turn to McCloskey's argument that the District Court failed to credit him for acceptance of responsibility for his offense under U.S.S.G. § 3E1.1. The Guidelines permit a court to credit a defendant where he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. A defendant who enters a guilty plea, however, is not entitled to this credit "as a matter of right." *Id.* cmt. n.3. Moreover, "conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." *Id.* cmt. n.4. As the Guidelines note, there may be "extraordinary cases" in which adjustments under § 3C1.1 and § 3E1.1 apply. *Id.*

To determine whether McCloskey's case is "extraordinary," the District Court appropriately reviewed the totality of the circumstances. In doing so, the Court explained that McCloskey's "obstructive conduct occurred long after the investigation in this case, required the government to file a lengthy response, required the court to hold a hearing, and further delayed resolution of the proceedings." App. 495-96. Significantly, we join the District Court in noting that McCloskey "has not yet admitted his obstructive conduct." Thus, while we commend McCloskey for abandoning his motion to withdraw his guilty plea, we ultimately hold that the District Court did not err in refusing to apply this enhancement.

## III.

For all the reasons stated above, we affirm the District Court's sentence.

9